United States District Court
Northern District of Alabama
Western Division

| | |
|---|---|
| Terri Kizziah, | ] |
| Plaintiff(s), | ] |
| vs. | ] CV-00-N-2768-W |
| National Weight Loss Centers of North Alabama, et al., | ] |
| Defendant(s). | ] |

**ENTERED**
JUN 0 5 2001

## Memorandum of Opinion

### I. Introduction

This court has for consideration (1) the motion of National Weight Loss Centers of Alabama's ("National Alabama") to dismiss the action, or in the alternative, motion for Summary Judgment [Doc. 1],[1] (2) the motion of L.A. Weight Loss Centers' ("L.A.") for summary judgment [Doc. 37], (3) the motion of Vahan Karabajakian's ("V. Karabajakian") to dismiss for want of *impersonal* jurisdiction [Doc. 21], and (4) the motion of Hi-Energy Weight Loss Control Centers ("Hi-Energy") to dismiss, or in the alternative, for summary judgment [Doc. 1]. Upon due consideration, these motions will be granted. Additionally, plaintiff's claims against National Weight Loss Centers of North Alabama ("National North Alabama") will be dismissed without prejudice. Finally, plaintiff will be required to show

---

[1] This motion, which was filed in state court before the removal here, was, along with all other documents in the file at the time of removal, given the number one by the clerk of this court.



cause why her claims against Alex Karabajakian ("A Karabajakian") and National Weight Loss Centers should not be dismissed, as explained below.

## II.     Facts[2]

After seeing an advertisement which stated "Lose all the weight you want for just $199," in August 1998, plaintiff Terry Kizziah ("Kizziah") enrolled in a weight loss program by entering into a "Service Guarantee" with National North Alabama for which she paid $370.00. She also paid National North Alabama for food supplements, bearing the name "National Weight Loss Centers," which cost her $28.00 per week. In late September 1998, Kizziah began to lose her hair and was advised to take vitamins which cost her $50.00 per week. In October 1998, she broke out in a rash over most of her body, and required medical treatment. She discontinued the weight-loss program in late October 1998.

Kizziah sued the defendants[3] National Alabama, Hi-Energy, and fictitious defendants 1-6 in the Circuit Court of Tuscaloosa, Alabama on January 18, 2000. The Amended Complaint added no defendants. In her second amended complaint, Ms. Kizziah added defendants National Weight Loss Centers, Alex Karabajakian, L.A., and Varan Karabajakian. The Third Amendment to the Complaint added National North Alabama. As amended, the complaints include eight counts. Defendants removed the action to this court on September 29, 2000.

---

[2] As noted in the text, these are the "facts" for purposes of this opinion only. They may not be the actual facts.

[3] The four versions of the Complaint present differing and a somewhat confusing variety of names for the defendants. The Court has attempted to view the possible defendants in a light most favorable to the plaintiff.

### III.    Discussion

#### A.    National Weight Loss Centers of Alabama Motion to Dismiss, or in the alternative, Motion for Summary Judgment

The plaintiff alleges causes of action against "National Weight Loss Centers of Alabama, Inc. and/or National Weight Loss Centers of North Alabama." National Alabama contends it has no involvement with the plaintiff and is not a successor in interest to National North Alabama. As evidence that National Alabama and National North Alabama are somehow "linked," plaintiff cites the involvement of the same person in the two corporations, Deborah Richardson, and the sale by both corporations of food supplement bottles bearing the name "National Weight Loss Centers."

The submissions filed in this court show that National Alabama is not a successor in interest to National North Alabama and that the two are separate corporate entities. The corporations do have some of the same management, i.e. Deborah Robinson is Vice President of both corporations. Additionally, both distribute supplements bearing the name "National Weight Loss Centers," but all supplements are purchased separately by each corporation for their clients. The plaintiff has pointed to no available evidence on which a trier of fact could find that one could be held liable for the conduct of the other.[4] For that reason, the court is left with no choice but to grant National Alabama's motion for summary judgment.

---

[4] For the remaining motions, the court will discuss whether a party is a successor only to National North Alabama because National Alabama is not the entity with which plaintiff dealt and is not a successor in interest to National North Alabama.

3

**B.    L.A.'s Motion for Summary Judgment**

In the Third Amendment to the Complaint, Plaintiff alleges L.A. is a successor in interest to National North Alabama. In an affidavit provided to the court, the Senior Vice president and General Counsel of L.A., Brian Siegel ("Siegel"), stated that L.A "is not a 'successor in interest' of National Weight Loss of North Alabama, Inc. and in fact has no relationship whatsoever (past or present) with National Weight Loss Centers. Furthermore, [L.A.] has neither received any assets, nor assumed any liabilities from National Weight Loss." (Aff. at 1.) Though afforded an opportunity to do so, the plaintiff had not responded to the motion. However, in her response to a separate motion in the case, plaintiff wrote she was told by an attorney that "an Independent [sic] audit has been ordered and is pending relative to potential transfer of assets from National Weight Loss Centers of North Alabama, Inc. to La [sic] Weight Loss Centers, Inc." (Pl.'s Response to Def. Karabajakian's Mot. to Dismiss [Doc. 30] at 2.) Other than this single statement, the plaintiff had provided the court with no evidence to support this allegation. In Siegel's affidavit, however, he states: "I understand that Ms. Kizziah has alleged that an independent audit has been 'ordered' by some unnamed entity concerning an alleged transfer of assets between [L.A.] and National Weight Loss. This is simply untrue." (Aff. at 2.) Therefore, without evidence to support her claim that an audit was order or to contradict the statement affidavit of Mr. Siegel the court must grant L.A.'s motion for summary judgment.

**C.     Motion to Dismiss of Varan Karabajakian for Lack of Personal Jurisdiction**

A federal court sitting in diversity may exercise jurisdiction over a nonresident defendant to the same extent as a court of that state. *Prejean v. Sonatrach, Inc.*, 652 F.2d 1260 (5th Cir. Unit A 1981). Alabama permits its courts to exercise jurisdiction over nonresidents to the fullest extent allowed under the Due Process Clause of the Fourteenth Amendment to the Constitution. Ala. R. Civ. P. 4.2(a)(2)(I); *Martin v. Robbins*, 628 So.2d 614, 617 (Ala.1993); *Horn v. Effort Shipping Co., Ltd.*, 777 F.Supp. 927, 929 (S.D.Ala.1991). The Due Process Clause permits a court to summon a nonresident to defend himself in the forum so long as that person has some "minimum contacts" with that state and, the exercise of personal jurisdiction over the defendant would not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Williams Elec. Co. v. Honeywell, Inc.*, 854 F.2d 389, 392 (11th Cir.1988).

The nonresident defendant's contacts with the forum must be such that he has "fair warning" that a particular activity may subject him to the jurisdiction of a foreign sovereign. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). A person has fair warning if he "purposefully directs" his activities at the forum, and claims of injury result from these activities. *Id.* The exercise of jurisdiction over him does not "offend traditional notions of fair play and substantial justice" because his conduct and connection with the forum are such that he should reasonably anticipated being haled into court there. *Id.* The Supreme Court has made very clear that: "[i]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

*de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1355-56 (11th Cir. 2000).

In the third Amendment to the Complaint, plaintiff avers that Varan Karabajakian is the president of L.A., the successor in interest to National Weight Loss Centers and/or National Alabama. According to Vahan's affidavit attached to the motion, he has owned L.A., which operates stores in Alabama, since February 1997. However, L.A. was dismissed from this lawsuit because it is not a successor in interest to National North Alabama.

Further, plaintiff has not provided the court with any evidence to support a finding that Vahan Karabajakian is related in anyway to National North Alabama.[5]

Because there is no evidence to support a finding that Varan Karabajakian was connected with National North Alabama, his motion to dismiss must be granted.

### D. Hi-Energy Weight Loss Control Centers Motion to Dismiss, or in the Alternative, Motion for Summary Judgment

The plaintiff alleges Hi-Energy is a successor in interest to National North Alabama. In support of this contention, she submitted documents to the court as "Exhibit 1" of her response to the motion. The first part of exhibit 1 is a letter from Hi-Energy to plaintiff's former attorney. In the letter, Hi-Energy explained that it allowed National North Alabama's clients to complete their weight loss programs with Hi-Energy, but received no compensation from National North Alabama and made no business agreement with National North Alabama. Hi-Energy took on the clients to gain a larger client base. Additionally, it received a box of prepaid supplements for National North Alabama's clients, and distributed the supplements to those who had purchased them. Kizziah's name was not on the client list Hi-Energy received from National, and Hi-Energy has no record of Kizziah ever being a client or guest of Hi-Energy. The second part of exhibit 2 is a letter from National to Hi-Energy. The letter states, in part, that "[National] will be responsible for the servicing of clients prior to April 21, 1999. Effective April 21, 1999, any servicing done by Hi-Energy to the individuals from the client list, will be the responsibility of Hi-Energy." (Pl.'s Response to Hi-Energy Motion [Doc. 28], Ex. 1 at 3.) National's clients were to receive a letter explaining Hi-Energy's involvement.

The plaintiff's evidence, rather than proving Hi-Energy to be the successor in interest to National North Alabama, in fact shows Hi-Energy to have volunteered to service National

---

[5] In Vahan's affidavit, he states "I am not now nor have I ever been an owner, officer, director, or employee of National Weight Loss Centers."

North Alabama's clients if those clients so desired. No document suggests Hi-Energy assumed the rights and liabilities of National. As the defendant stated, Hi-Energy merely agreed to distribute pre-paid supplements to Nationals former clients and assist them with their weight loss program if the client so desired. Therefore, Hi-Energy's motion for summary judgment is due to be granted.

### E. Dismissal of National Weight Loss Centers of North Alabama

The parties in this action realize National North Alabama filed for Chapter 7 bankruptcy protection approximately two years ago. *See, e.g.*, Removal Notice [Doc. 1]; plaintiff's Certificates of Service [Docs. 25, 28, 29, 30]. As such, this court cannot adjudicate those claims which should be dealt with by the bankruptcy court. Therefore, the plaintiff's claims against National North Alabama will be dismissed without prejudice.

### F. Show Cause as to Alex and National Weight Loss Centers

Alex and National Weight Loss Centers[6] have not made appearances in the case and there is no evidence in record that either was served, though the action has been pending for more than two years. Therefore, the plaintiff will be directed to show cause in writing no later than eleven days after the entry of this order why the claims against Alex and National Weight Loss Centers should not be dismissed for failure to prosecute.

## IV. Conclusion

An appropriate judgment will be entered contemporaneously with this memorandum of opinion.

Done, this 5th of June, 2001.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE

---

[6] National Weight Loss Centers is a defendant named separately from National North Alabama and National Alabama.

7